# EXHIBIT 1

Case 1:12-cv-21695-CMA   Document 108-1   Entered on FLSD Docket 04/26/2013   Page 2 of 17

AVROHOM PRAGER                                                              March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                                              1–4

## Page 1

```
 2      IN THE UNITED STATES DISTRICT COURT
 3        FOR THE SOUTHERN DISTRICT OF FLORIDA
 4              MIAMI DIVISION
 5
    A AVENTURA CHIROPRACTIC   )
 6  CENTER, INC., individually)
    and on behalf of all      )
 7  others similarly situated,)
                              )
 8       Plaintiff,           )
                              )
 9       vs.                  ) No. 1:12-cv-21695
                              )
10  MED WASTE MANAGEMENT, LLC,)
    a New York limited        )
11  liability company, and    )
    AVROHOM PRAGER,           )
12                            )
         Defendants.          )
13  --------------------------)
14
15
16       DEPOSITION OF AVROHOM PRAGER
17            New York, New York
18            March 20, 2013
19
20
21
22
23
24  Reported by:
    PAMELA J. MAZZELLA
25  CHICAGO JOB NO. 418241
```

## Page 2

```
 2           March 20, 2013
 3           10:06 a.m.
 4
 5       Deposition of AVROHOM PRAGER, held
 6  at the offices of Haynes and Boone, LLP,
 7  30 Rockefeller Plaza, New York, New York,
 8  pursuant to Notice, before Pamela J.
 9  Mazzella, a Notary Public of the State of
10  New York.
```

## Page 3

```
 2     A P P E A R A N C E S:
 3
 4     ANDERSON + WANCA
 5     Attorneys for Plaintiffs
 6         3701 Algonquin Road, Suite 760
 7         Rolling Meadows, Illinois 60008
 8     BY:  GEORGE LANG, ESQ.
 9         (via telephone)
10
11     HAYNES AND BOONE, LLP
12     Attorneys for Defendant Med Waste
13     Management, LLC and Avrohom Prager
14         30 Rockefeller Plaza, 26th Floor
15         New York, New York 10112
16     BY:  SARAH M. JACOBSON, ESQ.
17
18
19  ALSO PRESENT:
20     JONATHAN HOOK
```

## Page 4

```
 2      IT IS HEREBY STIPULATED AND AGREED,
 3  by and between the attorneys for the
 4  respective parties herein, that filing
 5  and sealing be and the same are hereby
 6  waived.
 7      IT IS FURTHER STIPULATED AND AGREED
 8  that all objections, except as to the
 9  form of the question, shall be reserved
10  to the time of the trial.
11      IT IS FURTHER STIPULATED AND AGREED
12  that the within deposition may be sworn
13  to and signed before any officer
14  authorized to administer an oath, with
15  the same force and effect as if signed
16  and sworn to before the Court.
```



AVROHOM PRAGER  
A AVENTURA CHIROPRACTIC vs. MED WASTE  
March 20, 2013  
5–8

Page 5

1  Avrohom Prager
2  A V R O H O M   P R A G E R , called
3  as a witness, having been duly sworn by a
4  Notary Public, was examined and testified
5  as follows:
6      MS. JACOBSON:  We'll read and
7  sign.
8  EXAMINATION BY
9  MR. LANG:
10    Q.  Good morning, Mr. Prager, my name
11  is George Lang, I represent the plaintiffs in
12  this case and we're here to take your
13  deposition.
14      I would like to ask you a question.
15  Have you ever been deposed before?
16    A.  No.
17    Q.  Okay.  So we can do some general
18  ground rules here.  Number one, my style is
19  to ask a direct question.  Please don't take
20  offense to it.  If you think I am being
21  offensive, please tell me, but again I just
22  ask direct questions, I think it goes faster
23  and I think it's more respectful.
24      If you don't understand any
25  question that I ask, please tell me, please

Page 6

1  Avrohom Prager
2  say I don't understand it and I'll ask it
3  again.
4      Your counsel may want to make an
5  objection at times, that's fine, and we'll
6  deal with those as they come.
7      We'll have some documents today to
8  talk about, we'll get to those.
9      Any time that you want to take a
10  break, for the washroom or just to catch your
11  breath, just let me know and we'll do that.
12      My intention right now is that
13  we'll be done well before lunch, I don't want
14  to go all day, I think we all have other
15  things to do as well.
16      So let me ask you, any questions so
17  far?
18    A.  No, I'm good.
19    Q.  Okay.  Now, I'm not in the room
20  with you so I can't see when you nod yes or
21  no or anything like that, so please make sure
22  that you give an audible answer.  Also the
23  court reporter, that helps the court
24  reporter.  And then also we have to be
25  careful not to talk over each other because

Page 7

1  Avrohom Prager
2  the court reporter can only take down one
3  person at a time, okay?
4      All right, can we give the witness
5  Exhibit 1, please.
6      (Prager Exhibit 1, Notice of
7  Deposition, marked for identification, as
8  of this date.)
9    Q.  Mr. Prager, this is the notice of
10  deposition that was provided probably to your
11  counsel, and we're here today pursuant to
12  this notice of deposition.
13      Have you seen this notice of
14  deposition?
15    A.  No.
16    Q.  Is there any reason why your
17  testimony here today is, should be considered
18  non-voluntary?
19      Are you under any drugs or
20  medications of any kind that can affect your
21  testimony?
22    A.  Nope.
23    Q.  Okay.  And you're here giving your
24  testimony of your own free will, correct?
25    A.  Yes.

Page 8

1  Avrohom Prager
2    Q.  Previously you spoke with Ryan
3  Kelly of my office regarding taking your
4  deposition on September 21st of 2012.
5      Do you recall that?
6    A.  Yes.
7    Q.  And it's my understanding that
8  between the time that you agreed to show up
9  for deposition and the date of the
10  deposition, that you retained counsel; is
11  that correct?
12    A.  Yes.
13    Q.  And then you did not show up on
14  September 21, correct?
15    A.  Yes.
16    Q.  And then you're here today to take
17  your deposition, correct?
18    A.  Yes.
19    Q.  Okay.  Now, let's go to Exhibit 2,
20  and this is the complaint.
21      Do you have that in front of you?
22    A.  Yes.
23    Q.  I want to ask you to start from the
24  front page, regarding the front page.  If you
25  look at the top, it says "A Aventura



800.211.DEPO (3376)  
EsquireSolutions.com

Case 1:12-cv-21695-CMA   Document 108-1   Entered on FLSD Docket 04/26/2013   Page 4 of 17

AVROHOM PRAGER                                                March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                                  9–12

Page 9

1     Avrohom Prager
2  Chiropractic Center, Inc. versus Med Waste
3  Management, LLC" and some others, including
4  yourself.
5       Do you see that?
6     A.  Yes.
7     Q.  Who or what is Med Waste
8  Management, LLC?
9     A.  I, I don't -- what do you mean by
10 that?
11    Q.  It is a company, correct, a limited
12 liability company, correct?
13    A.  Yes.
14    Q.  Did you start that company?
15    A.  Yes.
16    Q.  What year was that?
17    A.  December of 2008.
18    Q.  Okay, December 2008.  And it's an
19 LLC.  You are a member, correct?
20    A.  Yes.
21    Q.  Are you a manager?
22    A.  I don't understand that question.
23    Q.  Well, LLCs are operated by members
24 and managers.  Someone can be a member and
25 not be involved in the management of it.

Page 10

1     Avrohom Prager
2      So let me ask this question:  Are
3  there any other members of the LLC?
4     A.  Yes.
5     Q.  And who are they?
6     A.  Shulamit, my wife.
7     Q.  And is her last name the same as
8  yours?
9     A.  Yes.
10    Q.  Could you spell her first name for
11 the court reporter, please?
12    A.  S-H-U-L-A-M-I-T.
13    Q.  Is she involved in the day-to-day
14 operations of the LLC?
15    A.  No.
16    Q.  Okay.  And so that I'm correct, you
17 two are the two members and you two own 100
18 percent of Med Waste Management, correct?
19    A.  Yes.
20    Q.  Has there ever been in the
21 existence of Med Waste Management, LLC, been
22 any other members or any other with a
23 ownership interest, anyone else with a
24 ownership interest?
25    A.  Yes.

Page 11

1     Avrohom Prager
2     Q.  Okay, and who was that?
3     A.  Same last name, first name is
4  Y-A-K-O-V.
5     Q.  Was Yakov the only other
6  owner/member or were there others?
7     A.  The only one owner/member.
8     Q.  And what relation is Yakov to you
9  and your wife?
10    A.  Our uncle.
11    Q.  And what was the approximate, as
12 close as you can get, time period that Yakov
13 was a owner/member of the LLC?
14    A.  One year.
15    Q.  Okay, one year.  And what was the
16 dates of that year, please?
17      MS. JACOBSON:  If you don't know,
18    Mr. Prager, just don't guess.  You can
19    give approximations if you know it.
20    A.  I don't know.
21    Q.  I would like to pose it this way.
22 Was he around when you originated in '08?
23    A.  No.
24    Q.  Is he currently a
25 owner/member/manager?

Page 12

1     Avrohom Prager
2     A.  No.
3     Q.  Somewhere around approximately the
4  2010, 2011 time period was he involved?
5     A.  Somewhere around 2010 or 2011.
6     Q.  Okay, great.  Thank you.
7     A.  I'm sorry, I'm not sure because
8  that -- I'm not sure about that.
9     Q.  That's fine.
10      MS. JACOBSON:  Mr. Lang doesn't
11    want you to guess.  If you don't know,
12    say you don't know.
13    A.  I forgot about 2009.  I don't know.
14    Q.  That's fine.  Let me ask you this
15 way.  Again, I'm not trying to trick you and
16 I'm just trying to get what's in general
17 terms.  Was he more involved in -- it appears
18 that -- let me ask it this way:  Is my
19 understanding correct that Yakov was more
20 involved during the middle period of the LLC
21 as opposed to its formation and today?
22      MS. JACOBSON:  Objection.
23    A.  I don't understand the question.
24    Q.  Okay.  Well, it's 2008, 2009, 2010,
25 '11, '12, '13 and '14, okay, if that was sort

Case 1:12-cv-21695-CMA   Document 108-1   Entered on FLSD Docket 04/26/2013   Page 5 of 17

AVROHOM PRAGER                                                       March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                                      13–16

Page 13

1       Avrohom Prager
2  of a beginning and an end, was he closer to
3  the beginning, middle or the end?
4       A.  Beginning.
5       Q.  Closer to the beginning, okay.
6  Could you tell me generally what Med Waste
7  Management, LLC does?
8           What goods or services does it
9  offer?
10      A.  Medical waste disposal.
11      Q.  Okay.  And is there any specific
12  type of medical waste disposal that it
13  specializes in, or does it do all types?
14      A.  Anything classified medical waste
15  we do.
16      Q.  Okay.  And where is the geographic
17  operation of medical waste?
18          Where are your services offered,
19  what state?
20      A.  I don't have the full list in front
21  of me.
22      Q.  Let's put it this way:  Your work
23  right now, do you have clients in New York?
24      A.  Yes.
25      Q.  New Jersey?

Page 14

1       Avrohom Prager
2       A.  Yes.
3       Q.  What are the surrounding states
4  within, let's say, 20 or 30 miles of the
5  border?
6           MS. JACOBSON:  Objection.
7       A.  I don't have a map in front of me.
8  I don't know, I don't have the exact list.
9       Q.  Okay.  Do you do any in
10  Connecticut?
11      A.  I'm not sure.
12      Q.  Okay.  But it's possible.  Do you
13  have any other states that you concentrate,
14  that you have a high concentration of
15  clients, and besides New York and New Jersey?
16      A.  I don't understand the question.
17      Q.  All right.  How many -- what
18  percentage of your clients are in New York,
19  100 percent, 90 percent, 80 percent?  And
20  ballpark.  I'm not going to hold you to this,
21  I'm trying to get an idea of your business.
22      A.  I would be guessing, but it's got
23  to be around 50 percent.
24      Q.  Okay.  And what about New Jersey,
25  40 percent, 30 percent?

Page 15

1       Avrohom Prager
2       A.  Once again, I would be guessing --
3           MS. JACOBSON:  I'm going to
4  instruct Mr. Prager not to guess here,
5  Mr. Lang.  I'm sure that you're not
6  looking for a guess, you're looking for
7  what he knows.
8           MR. LANG:  Correct, correct.
9       Q.  We can change it to thirds.  And I
10  don't want to put words in your mouth, but my
11  understanding is that nearly half your
12  clients are in New York, in the immediate New
13  York area, right?
14          MS. JACOBSON:  Objection.
15      A.  I don't know.
16      Q.  Okay.  But you have a good
17  concentration of clients in New York; is that
18  a fair statement?
19          MS. JACOBSON:  Objection.
20      Q.  You can go ahead and answer, sir.
21      A.  I'm thinking.  I don't know
22  exactly, but I would assume so.
23      Q.  Okay.  And you, would it be fair to
24  say that you have a good concentration of
25  clients in New Jersey, correct?

Page 16

1       Avrohom Prager
2           MS. JACOBSON:  Objection.
3       A.  No.
4       Q.  Okay, no.  But you do have some
5  clients in New Jersey, correct?
6       A.  Yes.
7       Q.  And you may possibly have some
8  clients in the surrounding states in those
9  areas, correct?
10      A.  Yes.
11      Q.  What about Florida, do you have any
12  clients in Florida?
13      A.  Yes.
14      Q.  Do you have any clients in the
15  southern state outside of Florida to your
16  knowledge?
17      A.  I don't know exactly.  I would be
18  guessing.
19      Q.  Let's go at it this way:  Do you
20  provide the vehicles for your employees to go
21  and pick up medical waste or do they have to
22  use their own vehicles?
23          MS. JACOBSON:  Objection.
24      A.  I have my own vehicles in some of
25  the cases.



Case 1:12-cv-21695-CMA   Document 108-1   Entered on FLSD Docket 04/26/2013   Page 6 of 17

AVROHOM PRAGER                                                    March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                                      17–20

Page 17

1  Avrohom Prager
2  Q. In some of the cases.
3     How do you break your business
4  down? Do you break it down by routes or do
5  you break it down by geographical areas? Do
6  you break it down by location?
7     How do you break it down? How do
8  you manage your routes?
9     MS. JACOBSON: Objection.
10 A. My routes are managed by location.
11 Q. Okay, by location. All right. And
12 how many locations, approximately, does your,
13 does Med Waste pick up medical waste from
14 your clients?
15 A. Could you repeat the question?
16 Q. Let me try it another way.
17 Approximately how many clients does Med Waste
18 Management have?
19    How many accounts do you have, how
20 many offices or medical facilities are you
21 picking up waste from currently,
22 approximately?
23    MS. JACOBSON: Objection.
24 A. I don't know.
25 Q. Is it over a hundred?

Page 18

1  Avrohom Prager
2  A. Yes.
3  Q. Over a thousand?
4  A. I don't know.
5  Q. Over 500?
6  A. I don't know. I can guess. I
7  don't know.
8     MS. JACOBSON: Again, --
9  Q. I don't want you to guess. I want
10 to get a sense.
11 A. I don't know.
12 Q. Let me ask you this: How many
13 employees do you have?
14    How many route drivers do you have
15 right now; do you know?
16    MS. JACOBSON: Objection.
17 A. Two.
18 Q. I'm sorry, two?
19 A. Yup.
20 Q. And are they both in the New
21 York/New Jersey area, or is one in the New
22 York/New Jersey area and one in the Florida
23 area?
24 A. Both in New York, New Jersey.
25 Q. Are you currently picking up any

Page 19

1  Avrohom Prager
2  routes in Florida at this time?
3  A. No.
4  Q. I just asked you some questions
5  about the current state of your business.
6     Has your business changed any since
7  approximately 2010? In other words, has your
8  business declined or grown or stayed about
9  the same?
10 A. Has grown.
11 Q. Okay, it has grown, okay.
12    Let's get back to the first page of
13 Exhibit 2. Who is Meir Singer? And if I
14 mispronounced it, I mean no disrespect.
15 A. A friend of mine.
16 Q. And in what capacity -- strike
17 that.
18    Has he ever been a business
19 associate or partner with you in any fashion?
20 A. Yes.
21 Q. Okay. And can you describe that
22 then? Can you give me the general
23 description of that business relationship?
24 A. We manage properties for the banks
25 while the properties were in foreclosure.

Page 20

1  Avrohom Prager
2  Q. Okay. And was that Opal Management
3  LLC?
4  A. Yes.
5  Q. Did Opal Management LLC ever have
6  anything to do with the Med Waste Management,
7  LLC?
8  A. No.
9  Q. Did they ever share offices?
10    MS. JACOBSON: Objection.
11 Q. You can go ahead and answer.
12 A. We were in the same office
13 building.
14 Q. Okay. Were you owners/members of
15 Opal Management LLC?
16 A. Yes.
17 Q. Were there any other -- between Med
18 Waste Management, LLC and Opal Management
19 LLC, were there any other common members
20 besides yourself?
21 A. Nope.
22 Q. And once again, Opal Management LLC
23 was in the property management business?
24    MS. JACOBSON: Objection,
25    mischaracterized his testimony.

AVROHOM PRAGER  
A AVENTURA CHIROPRACTIC vs. MED WASTE  
March 20, 2013  
21–24

Page 21

1  Avrohom Prager
2      MR. LANG:  That's why I'm asking.
3      Q.  Let me ask it again, Mr. Prager.
4          Were the goods and services of Opal
5  Management LLC managing properties that the
6  bank held in foreclosure?
7      A.  Yes.
8      Q.  Who is Jonhathan Schlesinger?
9      A.  A former partner of Opal
10 Management.
11     Q.  And you said "partner." That was
12 an LLC so he was also a member; is that
13 correct?
14     A.  Yes.
15     Q.  Were the three of you, Mr. Singer,
16 Mr. Schlesinger and yourself, the full
17 ownership owners of Opal Management LLC?
18         MS. JACOBSON:  Objection.
19     A.  Yes.
20     Q.  Okay.  And approximately what was
21 the time period of Opal Management LLC?
22 Approximately when did it start?
23     A.  I don't remember.
24     Q.  Ballpark, 1990, 2000?
25         MS. JACOBSON:  Objection.

Page 22

1   Avrohom Prager
2      A.  Would you like me to guess?
3      Q.  No, I don't want you to guess.  I'm
4  just trying to get a general.
5          What is your best understanding of
6  how -- let me ask this", is Opal Management
7  LLC operating today?
8      A.  No.
9      Q.  When did it cease operations?
10     A.  Don't remember exactly.
11     Q.  Do you have any recollection as to
12 when, how old the company was when you ceased
13 operations; 2 years, 5 years, 10 years old?
14         MS. JACOBSON:  Objection.
15     A.  No.
16     Q.  Is Med Waste Management, LLC the
17 only medical waste disposal company that you
18 are associated with?
19     A.  Yes.
20     Q.  All right.  Attached to the
21 complaint -- well, let's just go to Exhibit
22 Number 3, it's the fax, it's also attached to
23 the complaint.
24         Do you have that in front of you?
25         (Prager Exhibit 3, copy of a fax of

Page 23

1   Avrohom Prager
2  an ad, marked for identification, as of
3  this date.)
4      A.  Yes.
5      Q.  Do you recognize this document?
6      A.  Yes.
7      Q.  Can you describe what is this
8  document that we're looking at, please?
9      A.  What do you mean by that?
10     Q.  This is a Med Waste Management
11 document, correct?
12     A.  I don't understand.  What do you
13 mean?
14     Q.  All right.  You just said that you
15 recognize this document.  On what basis do
16 you recognize this document?
17     A.  I had a company make a ad for me.
18     Q.  Okay, and what company was that?
19     A.  I don't recall.
20         MS. JACOBSON:  Mr. Lang, before
21 you go forward with this line of
22 questioning, I'm just going to note for
23 the record that the document that is
24 marked as Exhibit 3 does not appear to
25 be a complete rendering of this

Page 24

1   Avrohom Prager
2  document.  We believe that it is missing
3  some opt-out language at the bottom of
4  the document that actually appeared on
5  the original of the document.
6      MR. LANG:  Okay, and that's fine
7  and I will accept that.
8          Am I to guess then that somewhere
9  on the Call Today line at the bottom,
10 that it was cut out and only after the
11 number below that there's nothing; is
12 that correct?
13         MS. JACOBSON:  That's correct.
14         MR. LANG:  Okay, that's fine.  And
15 I will concede that that is just a
16 partial.
17 BY MR. LANG:
18     Q.  So you, Mr. Prager, you just said
19 you don't recall the name of the company.
20         Do you remember the names of any of
21 the employees of that company?
22     A.  No.
23     Q.  Let's just go forward calling it --
24 I don't know.  We'll just have to work around
25 it, not having the name.



Case 1:12-cv-21695-CMA   Document 108-1   Entered on FLSD Docket 04/26/2013   Page 8 of 17

AVROHOM PRAGER                                          March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                        25–28

Page 25

1        Avrohom Prager
2        And what was your relationship with
3   this company that this fax was associated
4   with?
5        MS. JACOBSON:  Objection.
6   A.  I asked them to create me a ad.
7   Q.  Okay.  And this is the ad that they
8   created, correct?
9        MS. JACOBSON:  Objection.  Again,
10       this is not the actual ad that they
11       created as it is missing the opt-out
12       notice on the bottom of Exhibit 3.
13       MR. LANG:  Okay.  Do you want to
14       switch?  Do you have the -- let's just
15       go to Number 2.  Let's go to Exhibit
16       Number 2 which is the fax associated to
17       that, if you'd like.
18       (Prager Exhibit 2, copy of
19       Complaint, marked for identification, as
20       of this date.)
21       MS. JACOBSON:  I believe that
22       Exhibit 2 is also missing -- actually,
23       what you gave us or what you gave the
24       court reporter does not have an
25       attachment to the complaint, so if you'd

Page 26

1        Avrohom Prager
2   like to send me an E-mail with the full
3   copy of what has now been marked as
4   Exhibit 3, that's fine, but I don't
5   currently have a full copy of that
6   document.
7        MR. LANG:  Yeah, I'd like to do
8   that except I'm not anywhere near a
9   computer right now.
10       MS. JACOBSON:  If you would like,
11       we can just stipulate for the record
12       that the document that has been marked
13       as Exhibit 3 is not the full document as
14       it is missing the opt-out notice, and
15       then we can go ahead with any line of
16       questioning that you wish.
17       MR. LANG:  I will gladly stipulate
18       to that.
19       MS. JACOBSON:  Okay.
20  BY MR. LANG:
21  Q.  Mr. Prager, do you understand that
22  your counsel and myself have agreed that this
23  ad is a, is missing one small portion on the
24  bottom, but we're going to go ahead and talk
25  about it today.

Page 27

1        Avrohom Prager
2        Is that okay with you, sir?
3   A.  Yes.
4   Q.  Let's get back to this.  You
5   contacted the company about them creating an
6   ad, correct?
7   A.  Yes.
8   Q.  Okay.  And you can't recall the
9   name of the company at this time, correct?
10  A.  Yes.
11  Q.  And you can't recall the name of
12  any individual at that company at this time,
13  correct?
14  A.  Yes.
15  Q.  If I mention the name Bob Martino
16  to you, does that refresh your recollection?
17       MS. JACOBSON:  Objection.  Are you
18       saying does that refresh his
19       recollection about the company which
20       created the ad for him, or does the name
21       Bob Martino ring a bell?
22       MR. LANG:  No, the Bob Martino
23       that created the ad.
24  A.  No.
25  Q.  And if I mentioned the company name

Page 28

1        Avrohom Prager
2   AdverFax, does that refresh your recollection
3   as to the name of the company that you asked
4   to create your ad?
5        MS. JACOBSON:  Objection.
6   A.  No.
7   Q.  So can you tell me a little bit
8   about this company that created the ad?
9        Can you tell me a little bit about
10  your communications with them that you
11  recall?
12  A.  Can you create me an ad.
13  Q.  Okay.  And what was their response
14  to that?
15  A.  No problem.
16  Q.  Okay.
17  A.  I think.  I don't recall exactly.
18  Q.  That's fine, that's fine.  And did
19  they in fact go ahead and create that ad for
20  you?  Yes or no.
21  A.  Yes.
22  Q.  And is this a fair representation
23  of that ad minus the opt-out language at the
24  bottom?
25  A.  Yes.



Page 29

1    Avrohom Prager
2        MR. LANG: I would like to put a
3    stipulation on the record too, counsel,
4    if you don't mind, although I agree to
5    call it opt-out language, that by no
6    means means that I'm agreeing that it is
7    adequate or not.
8        Is that fair?
9        MS. JACOBSON: That's fair.
10   BY MR. LANG:
11       Q.  Mr. Prager, did you have to pay
12   them for this? Yes or no?
13       A.  Yes.
14       Q.  Do you recall how much you paid
15   them for this?
16       A.  No.
17       Q.  If I said that it was approximately
18   a thousand dollars, would that refresh your
19   recollection?
20       MS. JACOBSON: Objection.
21       A.  Would you like me to guess?
22       MS. JACOBSON: He does not want
23   you to guess.
24       Q.  No.
25       A.  I'm sorry. No.

Page 30

1    Avrohom Prager
2        Q.  But would you agree, sir, that you
3    did in fact pay for this ad, correct?
4        A.  Yes.
5        Q.  Now, do you recall who designed
6    this ad?
7        MS. JACOBSON: Objection, asked
8    and answered.
9        A.  No.
10       Q.  This advertisement that was created
11   by this company which you paid for, how was
12   it then used?
13       How did you disseminate this ad?
14       MS. JACOBSON: Objection.
15       A.  I don't understand the question.
16       Q.  After this ad was created what did
17   you do with it?
18       A.  Saved it on my -- saved it.
19       Q.  Okay, saved it on your computer.
20   At some point after you saved it on your
21   computer did you actually send this ad out in
22   the marketplace?
23       A.  I don't understand the question.
24       Q.  All right, I'll ask you a different
25   question. At some point in time did you fax

Page 31

1    Avrohom Prager
2    this advertisement out in the marketplace?
3        MS. JACOBSON: Objection.
4    Counsel's asking you if you yourself
5    faxed this, what's been marked as
6    Exhibit 3, out in the marketplace. If
7    you understand what that means, you can
8    answer; if not, you can ask him to
9    clarify.
10       A.  What do you mean by "marketplace"?
11       Q.  To customers, out into the world,
12   out to your potential client base.
13       MS. JACOBSON: Same objection.
14       A.  Nope.
15       Q.  Did you ever send this out to
16   someone?
17       A.  Yes.
18       Q.  And who did you send this ad to?
19       A.  I wouldn't be able to get the whole
20   list of people. I don't know the whole list.
21       Q.  But a list. Let's start there.
22   Where did you get this list from?
23       A.  Maybe there wasn't a -- there was
24   no -- let me rephrase that. What I meant by
25   "list," it wasn't a specific list. I just

Page 32

1    Avrohom Prager
2    send it out to people.
3        Q.  Okay.
4        MS. JACOBSON: I'm sorry to
5    interrupt, but counsel is asking you if
6    you sent this ad which we're looking at,
7    as Exhibit 3, to anyone.
8        THE WITNESS: Yes.
9        Q.  Okay, thank you. And you sent it
10   out to this list, correct?
11       A.  No. What I was referring to as a
12   list is different people. I don't remember
13   exactly which people I sent it out to, but I
14   sent it out to people.
15       Q.  To approximately how many people
16   did you send it out?
17       MS. JACOBSON: Objection.
18       A.  I would be guessing. I don't know.
19       Q.  Can you give me a ballpark?
20       MS. JACOBSON: Objection, asked
21   and answered.
22       Q.  Was it over -- let's start with did
23   you send this list to at least 1,000 people?
24       MS. JACOBSON: Objection. What do
25   you mean, "this list"?



Case 1:12-cv-21695-CMA  Document 108-1  Entered on FLSD Docket 04/26/2013  Page 10 of 17

AVROHOM PRAGER                                                March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                                  33–36

Page 33

1    Avrohom Prager
2    Q. I'm sorry, this ad. Let's go back.
3  How big was this list? Do you have any
4  recollection as to the size of the list?
5        MS. JACOBSON: Objection.
6    A. No.
7    Q. Okay. Let's approach it this way.
8  This ad was saved on your computer, correct?
9    A. Yes.
10   Q. Was the list, members that this
11 list was sent to, was that also saved on your
12 computer?
13       MS. JACOBSON: Objection.
14   A. No.
15   Q. Okay. Was it also used by your
16 computer at some point?
17       MS. JACOBSON: Objection.
18   A. What was the question?
19   Q. Let's go ask it this way: What was
20 the mechanics for sending this ad out?
21   A. I would E-mail.
22   Q. You would E-mail it. Okay. You
23 would E-mail it from your computer?
24   A. Yes.
25       MS. JACOBSON: Just for the

Page 34

1    Avrohom Prager
2  record, what are you referring to when
3  you said "this list"?
4        MR. LANG: Whatever he testified
5    to.
6        MS. JACOBSON: I think he's
7    talking about the ad.
8        MR. LANG: And which I am. I
9    asked him about the ad and he said it
10   was sent to people on a list.
11   A. Let me recall that. You asked me
12 how many people did I send it to, I said I
13 don't know, probably a whole list of people.
14   Q. Okay. And then -- all right, let's
15 start from there.
16       And you can't recall -- do you have
17 any understanding of the size of the whole
18 list of people?
19       MS. JACOBSON: Objection.
20   A. That there was never -- no.
21   Q. Okay. Is it my understanding that
22 the size of that list changed over time?
23       MS. JACOBSON: Objection.
24   A. I just want to clarify when I refer
25 to a list, it's not a specific list, just

Page 35

1    Avrohom Prager
2  people that I may have sent to over time.
3    Q. Okay. Do you still have possession
4  of that list?
5        MS. JACOBSON: Objection, he just
6    stated that there was no list.
7        MR. LANG: Well, I'm using his
8    term.
9  BY MR. LANG:
10   Q. Sir, do you have that --
11   A. No.
12   Q. -- that group? You do not.
13   A. Okay, let's refer to it as a group.
14   Q. This group. And why, and tell me
15 how it came to be that you no longer have
16 possession of the information as to who was
17 in this group?
18       MS. JACOBSON: Objection.
19   A. I don't understand the question.
20   Q. When you sent this out from your
21 computer did you use any sort of software?
22       MS. JACOBSON: Objection.
23   A. No.
24   Q. You didn't. You did one E-mail at
25 a time?

Page 36

1    Avrohom Prager
2    A. Yes.
3    Q. Okay. What E-mail account did you
4  send these out from?
5        MS. JACOBSON: Objection.
6    A. My E-mail.
7    Q. And what is the, who is the E-mail
8  service provider?
9    A. I don't know what that is.
10   Q. Yahoo, Gmail?
11   A. Gmail. Gmail I go to.
12   Q. And what was your Gmail account
13 address?
14   A. Abe@MedWasteMgmt.com.
15   Q. Abe@MedWaste, and I didn't get the
16 rest of that.
17   A. M, as in Mary; G, as in George; M,
18 as in Mary; T, as in Tom, .com.
19   Q. Do you still have that? Is that
20 account sill active?
21   A. Yes.
22   Q. Besides sending them out from the
23 Abe@MedWasteMgmt account, did you disseminate
24 or send out this ad in any other fashion?
25       MS. JACOBSON: Objection.



Case 1:12-cv-21695-CMA   Document 108-1   Entered on FLSD Docket 04/26/2013   Page 11 of 17

AVROHOM PRAGER                                              March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                              37–40

Page 37

1  Avrohom Prager
2  A. What does disseminate mean?
3  Q. Send out.
4  A. No.
5  Q. Did anybody else send this out?
6      MS. JACOBSON: Objection.
7  A. Could you repeat the question?
8  Q. Yes. Do you know if any other
9  person or company sent this Med Waste
10 Management ad out into the marketplace?
11     MS. JACOBSON: Objection.
12 A. I can guess. I don't know for
13 sure.
14 Q. Again, he doesn't want you to
15 guess.
16 Q. Is it fair to say that someone else
17 or some other entity sent this ad out into
18 the marketplace?
19     MS. JACOBSON: Objection.
20 A. Yes.
21 Q. Okay. And what do you base that
22 knowledge on?
23 A. I would have my sales rep, my sales
24 rep would have it on his desk, and if anybody
25 ever called him, wanted to know more about

Page 38

1  Avrohom Prager
2  our company, he would send out this piece of
3  marketing material.
4  Q. And how would he send it out as a
5  piece of marketing material?
6  A. He would ask the customer how they
7  would like to receive it, and how ever they
8  said he would send it.
9  Q. How many sales reps does Med Waste
10 Management have today?
11 A. Two.
12 Q. And how many did it have in 2010?
13 A. One.
14 Q. Can you give me the names of the
15 sales reps today and in 2010?
16 A. Today is Shlomo Fried and -- I'm
17 getting brain freeze -- Zev Willeger. In
18 2010 Mayer Koslowitz.
19 Q. At any time in Med Waste's history
20 did it have any software on its computers or
21 computer system that allows the sending of
22 faxes?
23     MS. JACOBSON: Objection.
24 A. Yes.
25 Q. And can you give me the details of

Page 39

1  Avrohom Prager
2  that software, please?
3  A. Could you repeat the question?
4  Q. Yes. You just said that Med Waste
5  Management had software on one or more of its
6  computers that was capable of sending faxes.
7      Can you tell me the basis for that
8  statement, please?
9  A. Well, we had, we have -- we asked
10 the company to put on a fax, a fax program
11 onto our computer.
12 Q. Do you recall the name of that fax
13 program?
14 A. Nope.
15 Q. Do you recall the technical
16 requirements for that program?
17 A. No.
18 Q. Do you recall the volume at which
19 that fax program could operate; in other
20 words, how many faxes it could send out in, I
21 don't know, a 24-hour period?
22     MS. JACOBSON: Objection.
23 A. No.
24 Q. Do you have any recollection of
25 anything else about that fax program?

Page 40

1  Avrohom Prager
2  A. No.
3      MS. JACOBSON: Mr. Lang, would now
4  be an okay time to take a quick
5  five-minute break?
6      MR. LANG: Sure would.
7      MS. JACOBSON: All right.
8      (Recess taken.)
9  BY MR. LANG:
10 Q. Mr. Prager, we just got back from
11 break and I want to ask a follow-up question
12 to my earlier questions, okay, and I want to
13 set this question up so we can knock it out
14 in a few seconds, okay.
15     We covered some different areas --
16 A. Mr. Lang, I'm sorry for
17 interrupting you. I just wanted to clarify
18 two things that I had stated earlier in our
19 conversation.
20 Q. Okay.
21 A. The first thing is when you had
22 asked me, after I saved it on my computer,
23 did I send it out to anybody, and I responded
24 a whole list, by that list I was referring to
25 people that work in Med Waste Management,



Case 1:12-cv-21695-CMA   Document 108-1   Entered on FLSD Docket 04/26/2013   Page 12 of 17

AVROHOM PRAGER                                                        March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                                        41–44

Page 41

1    Avrohom Prager
2  family and friends, and someone by the name
3  of Bob Martino.
4    The second thing I wanted to
5  clarify is you asked me about two pieces --
6  about the software that we used to send out
7  faxes in my office. We have two pieces of
8  software.
9    The second one, I don't know if you
10 consider it a software or not. It's an e-fax
11 program that we used to send out faxes. It's
12 meant for sales reps to communicate with
13 customers or potential clients to actually
14 send faxes out. So if a customer would call
15 and say we want more information, we would
16 use this program called e-fax and send out a
17 fax.
18    Q. All right, thank you for the
19 clarification. Let me do some follow-up on
20 the e-fax then.
21    Do you still have the same e-fax
22 software on your computers today that you did
23 in 2010?
24    A. Let me just rephrase that. I don't
25 know if e-fax is a software or not a

Page 42

1    Avrohom Prager
2  software. It's like fine line, so I don't
3  know how you would call that.
4    Q. Okay. Do you have the same
5  computer systems today that you did in 2010?
6    A. I don't know.
7    Q. Are there any documents that you
8  have that would refresh your recollection as
9  to whether or not you have the same computer
10 system?
11    A. What do you refer to by "computer
12 system"?
13    Q. What you -- whatever this e-fax,
14 and I don't know what to call it, software,
15 whatever this e-fax software operated on.
16    A. It's an online --
17    MS. JACOBSON:   Objection.
18    A. E-fax is an online program.
19    Q. Okay. Was e-fax accessed by any
20 laptops at Med Waste?
21    A. I don't know.
22    Q. Was it, was e-fax accessed by any
23 desktop computers at Med Waste?
24    A. Yes.
25    Q. Does Med Waste still own those same

Page 43

1    Avrohom Prager
2  desktop computers today?
3    A. I don't understand your question.
4    Q. Okay. Let's take a step back.
5  E-fax was accessed on the internet by someone
6  at Med Waste, some people at Med Waste,
7  correct?
8    A. Yes.
9    Q. Was e-fax accessed in 2010 by one
10 or more people at Med Waste?
11    A. I don't recall.
12    Q. Okay. Let me ask the question this
13 way: In 2010 can you, do you have any
14 recollection as to the number of laptops and
15 desktops that Med Waste had?
16    MS. JACOBSON:   Objection.
17    A. Nope.
18    Q. Okay. The computers that exist at
19 Med Waste today, do you have any
20 understanding as to how long Med Waste has
21 owned and operated those?
22    A. I'm not getting you.
23    Q. At Med Waste, when you go back
24 there and sit down at your desk, do you have
25 a laptop in front of you or do you use a

Page 44

1    Avrohom Prager
2  desktop?
3    A. A desktop.
4    Q. And for how many years have you had
5  that specific desktop? How old is it?
6    A. I don't recall.
7    Q. Okay, you don't recall. And the
8  other employees of Med Waste, do they use
9  laptops or desktops like you?
10    A. Desktops.
11    Q. Okay. Do you have any recollection
12 as to how old those desktops are?
13    A. I don't know exactly. I can guess.
14    Q. I don't want you to guess. Are
15 there any documents in the possession of Med
16 Waste that would refresh your recollection as
17 to how old the current computers are at Med
18 Waste?
19    A. I don't know.
20    Q. I want to -- and when we started
21 this I was starting to explain a line of
22 questioning, and basically that we've just
23 sort of explored that, but I want to ask on
24 different topics.
25    Is Med Waste in possession of any



AVROHOM PRAGER  
A AVENTURA CHIROPRACTIC vs. MED WASTE

March 20, 2013  
45–48

Page 45

1    Avrohom Prager
2    document that would refresh your recollection
3    as to whether or not AdverFax was the company
4    that you purchased, that you dealt with
5    regarding this ad?
6         MS. JACOBSON:  Objection.
7    A.  I don't understand the question.
8    Q.  We had talked earlier about this
9    ad, that you had contacted a company and they
10   helped you create this ad.
11        MS. JACOBSON:  When you say "this
12   ad," Mr. Lang, you're referring to
13   Exhibit 3?
14        MR. LANG:  Correct.
15        MS. JACOBSON:  Okay.
16        MR. LANG:  I'm sorry, yes, Exhibit
17   3.
18   BY MR. LANG:
19   Q.  Let's look at Exhibit 3.  You had
20   testified that a company was involved in
21   creating this ad, an outside company was
22   involved in creating this ad.
23        Are there any documents in the
24   possession of Med Waste that would refresh
25   your recollection as to what the name of that

Page 46

1    Avrohom Prager
2    company is?
3    A.  I don't know.
4    Q.  I had asked earlier if the name Bob
5    Martino refreshed your recollection.
6         Is Med Waste in possession of any
7    documents that would refresh your
8    recollection as to whether or not it was in
9    fact Bob Martino that you dealt with?
10        MS. JACOBSON:  Objection.  I
11   think, Mr. Lang, for the record, you
12   were asking Mr. Prager about Exhibit 3,
13   the ad, and he has already testified
14   that he did not create the ad with Mr.
15   Martino or his company and he didn't
16   remember the name of that company.
17   Q.  Is that true, Mr. Prager, it's your
18   testimony that --
19   A.  Yes.
20   Q.  Okay.  Who did create this ad?  Who
21   designed it?
22        MS. JACOBSON:  Objection, asked
23   and answered.
24   Q.  Please, I forgot the answer now.
25   I want to ask you again, who created this ad?

Page 47

1    Avrohom Prager
2    A.  I don't recall.
3    Q.  Are there any documents in the
4    possession of Med Waste that would refresh
5    your recollection as to who created this ad?
6    A.  I don't know.
7    Q.  Are there any documents in the
8    possession of Med Waste that would refresh
9    your recollection as to how many, as to the
10   size of the list of people that this ad was
11   sent to?
12        MS. JACOBSON:  Objection.
13   Q.  You can go ahead and answer.
14   A.  I thought I cleared for the record
15   when I was referring to a list of people,
16   what I did afterwards, was business
17   associates of Med Waste Management, family
18   and friends, and someone by the name of Bob
19   Martino.
20   Q.  So it's your testimony that the
21   list was sent to Bob Martino?
22        MS. JACOBSON:  Objection,
23   mischaracterizes the testimony.
24        MR. LANG:  And, I'm sorry, I'm not
25   trying to mischaracterize, I'm trying to

Page 48

1    Avrohom Prager
2    understand his answer, so let me try it
3    again.
4    BY MR. LANG:
5    Q.  We talked about this list, this
6    list of people.  You're saying that this list
7    was sent to a few people or there was only a
8    few people on the list?
9    A.  We never talked about -- the list
10   that I was referring to was a list of people
11   who I had sent this fax to.  That list
12   consists of, people on that list is people
13   who work at Med Waste Management, family and
14   friends, and someone by the name of Bob
15   Martino.
16   Q.  What do you recall sending to Bob
17   Martino?
18   A.  A copy of this ad.
19   Q.  Okay.  Do you know what Mr. Martino
20   did with it after he received it?
21        MS. JACOBSON:  Objection.
22   A.  I don't know for sure.
23   Q.  Do you have any understanding of
24   what he did with it after he received it?
25        MS. JACOBSON:  Objection.



800.211.DEPO (3376)  
EsquireSolutions.com

| AVROHOM PRAGER | March 20, 2013 |
|---|---|
| A AVENTURA CHIROPRACTIC vs. MED WASTE | 49–52 |

Page 49

1  Avrohom Prager
2  A. I can tell you what he told me he
3  would do.
4  Q. Which was?
5  A. He would fax it to people.
6  Q. Okay. Was that service included in
7  a fee that you provided him?
8     MS. JACOBSON: Objection.
9  Q. You can go ahead and answer, sir.
10 A. I don't understand your question.
11 Q. He told you that he was going to
12 fax it, correct?
13 A. Yes.
14 Q. Okay. And do you have an
15 understanding as to whether he did or did not
16 fax it?
17    MS. JACOBSON: Objection.
18 A. I can tell you what he told me.
19 Q. And would you repeat that again so
20 the record is clear, please?
21 A. I can tell you what Bob Martino had
22 told me.
23 Q. Which is, again, for the record?
24 A. He is faxing out these faxes.
25 Q. Okay.

Page 50

1  Avrohom Prager
2  Q. Do you know who Mr. Martino faxed
3  this ad out to?
4     MS. JACOBSON: Objection.
5  A. I'm not -- could you rephase the
6  question?
7  Q. Do you have an understanding as to
8  who Mr. Martino was going to fax this ad out
9  to?
10    MS. JACOBSON: Objection. He's
11    only asking you what you know.
12 A. I don't know. I can tell you what
13 he told me.
14 Q. Which is what you've already said,
15 correct?
16 A. Pard me?
17 Q. What you've told me before, that
18 the full extent of what he said, that he was
19 going to fax this out?
20 A. I don't think -- did I tell you who
21 he was going to fax it out to?
22 Q. That's what I'm asking, that's what
23 I'm trying to ask.
24    Did you have an understanding as to
25 who he was going to fax it out to?

Page 51

1  Avrohom Prager
2     MS. JACOBSON: Objection.
3  A. My answer to that is I can tell you
4  who Bob Martino told me he will. I don't
5  know who he did or didn't.
6  Q. And who did he tell you he was
7  going to fax it out to?
8     MS. JACOBSON: Objection.
9  A. Potential customers who are in that
10 service.
11 Q. Did you have an understanding of
12 what "potential customers" meant?
13 A. Yes.
14 Q. And what was that understanding,
15 please?
16 A. People who I bring service who
17 would need medical waste disposal.
18 Q. Did you have an understanding as to
19 the volume, the quantity or number of faxes
20 that Mr. Martino was going to send out to
21 these potential customers?
22    MS. JACOBSON: Objection.
23 A. I don't recall.
24 Q. Do you have an understanding as to
25 the size of the potential customers, the

Page 52

1  Avrohom Prager
2  number of potential customers that he was
3  going to fax this out to?
4     MS. JACOBSON: Objection.
5  A. I don't recall.
6  Q. Okay. Are there any documents in
7  the possession of Med Waste that would help
8  you refresh your recollection as to this line
9  of questioning, for more specific answers?
10 A. I don't know.
11 Q. Okay. When we talk about potential
12 customers, that would include doctors'
13 offices, correct?
14 A. Yes.
15 Q. Pharmacies, correct?
16 A. Yes.
17 Q. Nursing homes, correct?
18 A. Yes.
19 Q. Veteran's homes, correct?
20 A. Pard me?
21 Q. Veteran's homes, correct?
22 A. Yes.
23 Q. Funeral homes, correct?
24 A. Yes.
25 Q. I want to look at Exhibit 3 again.



AVROHOM PRAGER  
A AVENTURA CHIROPRACTIC vs. MED WASTE  
March 20, 2013  
53–56

Page 53

1     Avrohom Prager
2  Do you have that in front of you?
3     A.  Yes.
4     Q.  And I believe it's cut off at the
5  bottom.  Now, I'm going to -- you may have to
6  go to number 2, but there is an 888 number at
7  the bottom.
8        Do you see that?
9     A.  Yes.
10    Q.  And that number, for the record, is
11  888-431-6386.
12       Is that a phone number that Med
13  Waste owns?
14    A.  Yes.
15    Q.  And how long have you had that
16  number?
17    A.  Since we started.
18    Q.  And that was late 2008, early 2009,
19  correct?
20    A.  Yes.
21    Q.  All right.  I'm going to ask a
22  couple of general questions about insurance
23  at Med Waste, okay?
24       Was James River Insurance Company
25  your insurance provider?  Or, excuse me, not

Page 54

1     Avrohom Prager
2  yours, Med Waste's insurance provider?
3     A.  Yes.
4     Q.  Did you have insurance from 2008 to
5  present from James River, "you" meaning Med
6  Waste?
7     A.  I don't know.
8     Q.  Okay.  Do you have any recollection
9  as to whether or not it ever lapsed at any
10  time and you didn't have coverage?
11    A.  I don't know.
12    Q.  Okay.  Did you have any commercial
13  general liability policies with any other
14  company, "you" being Med Waste Management?
15    A.  I don't know.
16    Q.  Are there any documents in the
17  possession of Med Waste that would help
18  refresh your recollection to that?
19    A.  I'm not sure.
20    Q.  I have one additional question,
21  sir:  Med Waste Management, LLC and yourself
22  answered the complaint in this case and a
23  first affirmative defense was there, and that
24  first affirmative defense reads as follows:
25  "This action is not appropriate for class

Page 55

1     Avrohom Prager
2  treatment."
3        Sir, do you recall the basis by
4  which that first affirmative defense is
5  asserted?
6        MS. JACOBSON:  Objection.
7     A.  I have no idea what you're talking
8  about.
9        MR. LANG:  Okay, that's fine.
10    That's fine.  I'm looking over -- I do
11    not have any other questions.
12       Counsel, did you have any?
13       MS. JACOBSON:  Do you know what?
14    I would just like a quick five-minute
15    break to think about that and we'll come
16    back on the record in a few minutes.
17    Is that okay?
18       MR. LANG:  That's fine.
19       MS. JACOBSON:  Thank you.
20        (Recess taken.)
21       MR. LANG:  I do have one question,
22    I'll ask it, or you can go first if you
23    have any.
24       MS. JACOBSON:  Go ahead.
25  BY MR. LANG:

Page 56

1     Avrohom Prager
2     Q.  If you look at Exhibit 2, Mr.
3  Prager, the plaintiff in the case is A
4  Aventura Chiropractic Center.
5        Do you see that, sir?
6     A.  Yes.
7     Q.  Do you know who they are?
8     A.  Not sure.
9     Q.  Do you know if they had a business
10  relationship with Med Waste Management, LLC?
11       MS. JACOBSON:  Objection.
12    A.  Not sure.
13    Q.  Are there any documents in the
14  possession of Med Waste that would refresh
15  your recollection?
16    A.  I don't know.
17       MR. LANG:  All right, thank you.
18    I have no other questions.
19       (Continued on the following page to
20    include jurat.)



Case 1:12-cv-21695-CMA   Document 108-1   Entered on FLSD Docket 04/26/2013   Page 16 of 17

AVROHOM PRAGER                                                March 20, 2013
A AVENTURA CHIROPRACTIC vs. MED WASTE                                  57–60

Page 57
1  Avrohom Prager
2      MS. JACOBSON: And I have no
3  further questions, or any questions for
4  that matter, for Mr. Prager.
5      MR. LANG: Okay, great.
6          (Time noted: 11:21 a.m.)
7  _____
8          AVROHOM PRAGER
9
10 Subscribed and sworn to before me
11 this ___ day of _____, 2013.
12
13 _____

Page 58
1
2          CERTIFICATE
3  STATE OF NEW YORK   )
4                     : ss.
5  COUNTY OF NEW YORK  )
6
7      I, PAMELA J. MAZZELLA, a Notary
8  Public within and for the State of New
9  York, hereby certify:
10     That AVROHOM PRAGER, the witness
11 whose deposition is hereinbefore set
12 forth, was duly sworn by me and that such
13 deposition is a true record of the
14 testimony given by the witness.
15     I further certify that I am not
16 related to any of the parties to this
17 action by blood or marriage, and that I
18 am in no way interested in the outcome of
19 this matter.
20     IN WITNESS WHEREOF, I have hereunto
21 set my hand this 23rd day of March, 2013.
22         _Pamela J. Mazzella_
23 _____
24         PAMELA J. MAZZELLA
25

Page 59
1
2  ----------------- I N D E X -----------------
3  WITNESS        EXAMINATION BY      PAGE
4  AVROHOM PRAGER    Mr. Lang          5
5  ----------------- EXHIBITS -----------------
6  * * * * * EXHIBITS SEPARATELY BOUND * * * * *
7
8  Prager Exhibit 1, Notice of       7
9  Deposition, marked for
10 identification
11 Prager Exhibit 3, copy of a fax of  22
12 an ad, marked for identification
13 Prager Exhibit 2, copy of         25
14 Complaint, marked for
15 identification

Page 60
1  DEPOSITION ERRATA SHEET
2
3  Our Assignment No.: 418241
4  Case Caption: A Aventura Chiropractic
5  Center, Inc. - v - Med Waste Management, LLC,
6  and Avrohom Prager
7      DECLARATION UNDER PENALTY OF PERJURY
8
9      I declare under penalty of perjury
10 that I have read the entire transcript of my
11 Deposition taken in the captioned matter or
12 the same has been read to me, and the same is
13 true and accurate, save and except for
14 changes and/or corrections, if any, as
15 indicated by me on the DEPOSITION ERRATA
16 SHEET hereof, with the understanding that I
17 offer these changes as if still under oath.
18         _____
19             AVROHOM PRAGER
20 Subscribed and sworn to on the ____ day of
21 _____, 20 ____ before me.
22 _____
23 Notary Public,
24 in and for the State of
25 _____.



AVROHOM PRAGER  
A AVENTURA CHIROPRACTIC vs. MED WASTE

March 20, 2013  
61–62

Page 61

```
 1      DEPOSITION ERRATA SHEET
 2   Page No.____Line No.____Change to:_____
 3   _____
 4   Reason for change:_____
 5   Page No.____Line No.____Change to:_____
 6   _____
 7   Reason for change:_____
 8   Page No.____Line No.____Change to:_____
 9   _____
10   Reason for change:_____
11   Page No.____Line No.____Change to:_____
12   _____
13   Reason for change:_____
14   Page No.____Line No.____Change to:_____
15   _____
16   Reason for change:_____
17   Page No.____Line No.____Change to:_____
18   _____
19   Reason for change:_____
20   Page No.____Line No.____Change to:_____
21   _____
22   Reason for change:_____
23
24   SIGNATURE:_____DATE:_____
25        AVROHOM PRAGER
```

Page 62

```
 1      DEPOSITION ERRATA SHEET
 2   Page No.____Line No.____Change to:_____
 3   _____
 4   Reason for change:_____
 5   Page No.____Line No.____Change to:_____
 6   _____
 7   Reason for change:_____
 8   Page No.____Line No.____Change to:_____
 9   _____
10   Reason for change:_____
11   Page No.____Line No.____Change to:_____
12   _____
13   Reason for change:_____
14   Page No.____Line No.____Change to:_____
15   _____
16   Reason for change:_____
17   Page No.____Line No.____Change to:_____
18   _____
19   Reason for change:_____
20   Page No.____Line No.____Change to:_____
21   _____
22   Reason for change:_____
23
24   SIGNATURE:_____DATE:_____
25        AVROHOM PRAGER
```

